IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

_____

| | |
|---|---|
| THOMAS C. BARNETT, JR., SHARON B. TYSON, and DAVID ALAN HARRIS, In their Capacities as Trustees of THE THOMAS O. BARNETT TRUST and as Executors of THE ESTATE OF T.O. BARNETT, deceased, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 06-2171 P<br>) |
| AMERICAN HERITAGE LIFE INSURANCE COMPANY, | )<br>)<br>) |
| Defendant/Third-Party Plaintiff, | )<br>)<br>) |
| v. | )<br>) |
| ANGELINA VIRGINIA BARNETT, | )<br>) |
| Third-Party Defendant. | ) |

_____

**AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW**
_____

Plaintiffs filed suit against American Heritage Life Insurance Company ("American Heritage") for death benefits payable on annuity contracts purchased in July of 2000, by plaintiffs' grandfather, Thomas O. Barnett. American Heritage had, on the death of Mr. Barnett, initially recognized Mr. Barnett's second wife, Angelina Virginia Barnett, as the beneficiary of both annuities. Because Mrs. Barnett elected to receive income from the annuity contracts

after Mr. Barnett's death, rather than lump sum death benefits, the annuity contract principal amounts remained in the hands of American Heritage until the time this action was commenced.

After the plaintiffs filed suit, American Heritage interpleaded the funds of the annuities and brought into the action as a third-party defendant Mrs. Barnett. With the approval of all parties, American Heritage paid into the registry of the court the cash surrender value of the two annuity contracts, which totaled $602,638.05.[1] American Heritage disclaimed any interest in the interpleaded funds and was subsequently dismissed from the cause.

The uncertainty over entitlement to the death benefits arose from language appearing on each of two change of beneficiary forms for the annuities. The court heard proof at trial on the merits commencing on November 26, 2007. The court empaneled a jury, which returned a verdict in favor of Mrs. Barnett as follows:

**JURY VERDICT**

> Have the plaintiffs met their burden by establishing by clear and convincing evidence that defendant Angelina Barnett wrote her name as the beneficiary onto the two Beneficiary Change Forms executed on November 20, 2000 by Thomas O. Barnett, deceased, without his authority (your decision must be unanimous)?
>
> _____ Yes, we find for the Plaintiffs against Mrs. Barnett.
>
> __X__ No, we find for Mrs. Barnett.

---

[1]Shortly before trial, Mrs. Barnett argued that the amount that American Heritage deposited into the registry of the court should have included the surrender charge withheld by American Heritage. The court denied the relief sought by Mrs. Barnett.

In light of the jury's verdict, the parties have agreed that the remaining issue should be decided by the court – that is, whether the Trust or Mrs. Barnett should be treated as the beneficiary of the annuities, or alternatively, whether the change of beneficiary forms should be considered void and of no effect, such that the Estate should be treated as the beneficiary.

Based upon the evidence presented, the court hereby makes the following findings of fact and conclusions of law.

## **FINDINGS OF FACT**

1. On July 24, 2000, Thomas O. Barnett ("T.O. Barnett" or "Mr. Barnett") created the Thomas O. Barnett Revocable Trust (the "Trust"), and executed a Declaration of Intent stating Mr. Barnett's intent to place all of his personal property into the Trust. (Trial Ex. 15).

2. On August 28, 2000, American Heritage Life Insurance Company ("American Heritage") issued Single Premium Deferred Annuity Contract Number AHL 401459, in the amount of $272,500.17. When issued, the owner of the contract was Thomas O. Barnett; the annuitant was Thomas O. Barnett; and the beneficiary was the estate of annuitant. (Stipulated Fact No. 1; Pretrial Order, D.E. 96; Trial Ex. 3).

3. On September 18, 2000, American Heritage issued Single Premium Deferred Annuity Contract Number AHL 401521, in the amount of $213,624.96. When issued, the owner of the contract was Thomas

O. Barnett; the annuitant was Thomas O. Barnett; and the beneficiary was the estate of annuitant. (Stipulated Fact No. 2; Pretrial Order, D.E. 96; Trial Ex. 4).

4. The policy language of the two American Heritage Annuity Policies is identical.

5. On or about October 18, 2000, Ms. Lynne Lawrence, who worked with Mr. Barnett's long-time insurance agent, Mr. Lester Rosen, sent a letter on behalf of Mr. Barnett to American Heritage asking it to change the beneficiary on the two annuity policies from the estate of T.O. Barnett (the "Estate") to the Trust. Mr. Barnett signed both the change form and the letter. (Trial Ex. 8). Clearly, as of October 18, Mr. Barnett intended to designate the Trust as the primary and sole beneficiary on both annuities.

6. Mr. Barnett married Angelina Virginia Barnett on October 19, 2000, in Memphis. At the time, Mr. Barnett was 84 years old and Mrs. Barnett was 73 years old. They planned the wedding a short time before October 19, and hosted a reception following the wedding at the Summit Club in Memphis.

7. Shortly after their marriage on October 19, 2000, Mr. Barnett and Mrs. Barnett went to Florida to reside for the winter at Mr. Barnett's second home in Lakeland, Florida. They stayed in Florida until approximately April of 2001, at which time they returned to Memphis.

8. On or about November 3, 2000, American Heritage replied to Ms. Lawrence's letter of October 18, 2000, by sending two

separate letters stating that American Heritage could not complete the request for change of beneficiary because the request was not submitted on the correct form. These November 3, 2000 letters were mailed to Pauline Mohundro ("Ms. Mohundro"), Mr. Barnett's long-time secretary who resided in Memphis, along with copies of the correct forms to be used to accomplish a change of beneficiary. (Trial Ex. 7). Ms. Mohundro forwarded these forms to Mr. Barnett in Florida.

9. While residing in Florida, on November 20, 2000, Mr. Barnett executed two Beneficiary Change Forms (the "Beneficiary Change Forms" or the "Forms") for the two annuity policies. It is undisputed that Mr. Barnett signed each Beneficiary Change Form. (Trial Ex. 5 & 6).

10. The Beneficiary Change Forms each provide that:

> THE POLICYOWNER REVOKES ANY PREVIOUS DESIGNATION OF BENEFICIARY . . . FOR THE POLICY. [BY] RECORDING THE INSTRUMENT THE COMPANY AGREES, THAT THE CHANGE OF BENEFICIARY REQUESTED SHALL BECOME EFFECTIVE UPON RECEIPT AND RECORDING OF THIS PROPERLY COMPLETED FORM BY THE COMPANY . . . . (Trial Ex. 5 & 6, p. 2).

11. Mr. Barnett's signatures on the Beneficiary Change Forms were witnessed by Mr. Russell Obenchain, Mr. Barnett's next-door neighbor in Lakeland, Florida, who is now deceased. (Trial Ex. 5 & 6).

12. The Beneficiary Change Forms provide in hand-printing that the primary beneficiary of the two annuities is Mrs. Barnett. (Trial Ex. 5 & 6).

-5-

13. Mr. Barnett was strong-willed, opinionated, made his own decisions, and liked to be "the boss." Further, Mr. Barnett was a successful businessperson and kept close track of his money and his other assets. (Trial Testimony of Thomas C. Barnett, Jr., Sharon Tyson, Alan Harris, Lynne Lawrence, Lester Rosen and Angelina Barnett).

14. Mr. Barnett either hand-printed Mrs. Barnett's name on each of the Beneficiary Change Forms, or the hand-printing was inserted at his direction and with his authorization. (Jury Verdict; Trial Ex. 28 & 29). Indeed, the hand-printing that appears on the Forms are much more consistent with known samples of Mr. Barnett's handwriting which were admitted at trial than the known samples of Mrs. Barnett's handwriting.

15. In addition to Mrs. Barnett, the Beneficiary Change Forms also contain an incomplete, type-written reference to the Trust. The tax identification number of the Trust and the date of the Trust are missing. (Trial Ex. 5 & 6). Although there is no direct evidence as to who typed the reference to the Trust on the Beneficiary Change Forms, the proof establishes that Ms. Mohundro regularly utilized in connection with Mr. Barnett's affairs a typewriter, the typing of which resembles the typed references to the Trust on the Forms. (Trial Testimony of Lynne Lawrence; Trial Ex. 10-12). Thus, the circumstantial evidence is that Ms. Mohundro typed the incomplete reference to the Trust onto the Beneficiary

Change Forms in Memphis and then mailed the Forms to Mr. Barnett in Florida.

16. The Beneficiary Change Forms require that if the owner of a policy wishes to designate a trust as beneficiary, the owner must provide copies of the first and last page of the trust instrument, the date of the trust, and the trust number. (Trial Ex. 3-6).

17. American Heritage was never provided copies of any part of the Trust, the date of the Trust, or its tax identification number. (Trial Testimony of Ugal Chand and Sharon Whichard).

18. On November 28, 2000, American Heritage acknowledged receipt of the two Beneficiary Change Forms that had been executed by Mr. Barnett on November 20, 2000. An agent of American Heritage signed the second page of each Form in the box stating, "For office use only. Acknowledgment of request for change – please attach to policy. The above company has recorded the change requested." (Trial Ex. 5 & 6).

19. The next day, November 29, 2000, American Heritage wrote Mr. Barnett in care of Ms. Mohundro, stating that it had completed Mr. Barnett's request to change the beneficiary of the two policies and including copies of the two acknowledged Forms. American Heritage sent a carbon copy of the letters to Ms. Lawrence without the enclosures. (Trial Ex. 13 & 14).

20. Shortly after Mr. and Mrs. Barnett returned from Florida to Memphis, on May 19, 2001, Mr. Barnett contracted to purchase a new home at 1024 Murray Hill Lane in Memphis from the builder,

Hyneman-Bronze, LLC, with the Trust to be the purchaser and owner. (Trial Testimony of Jeffrey Bronze; Trial Ex. 16).

21. Prior to the closing on 1024 Murray Hill Lane, however, Mr. Barnett called Mr. Jeffrey Bronze of Hyneman-Bronze, LLC and instructed Mr. Bronze to have the home titled jointly in the names of Mr. and Mrs. Barnett. (Trial Testimony of Jeffrey Bronze).

22. At the closing on June 14, 2001, 1024 Murray Hill Lane was titled jointly in the names of Mr. and Mrs. Barnett. The joint ownership is reflected in the warranty deed for the property filed with the Register of Shelby County. (Trial Testimony of Jeffrey Bronze; Trial Ex. 17 & 18).

23. Mr. Barnett was diagnosed with cancer of the tonsils in approximately September of 2001. (Trial Testimony of Plaintiffs and Angelina Barnett).

24. On October 25, 2001, Mr. Barnett changed the beneficiary of his John Hancock Variable Annuity No. VP2034385 to Mrs. Barnett. (Trial Testimony of Lynne Lawrence).

25. On January 16, 2002, upon reinstatement of his Bankers Life Policy No. 0100491625 that had lapsed, Mr. Barnett named Mrs. Barnett as the beneficiary of that policy. (Trial Testimony of Lynne Lawrence).

26. Mr. Barnett died on March 1, 2002. (Trial Testimony of Plaintiffs and Angelina Barnett).

27. At no time from the date of execution of the Beneficiary Change Forms (November 20, 2000) to the date of his death (March 1,

2002), did Mr. Barnett make any effort to revise the Beneficiary Change Forms to delete Mrs. Barnett as primary beneficiary. (Trial Testimony of all witnesses). However, there was no evidence presented at trial indicating that Mr. Barnett reviewed the beneficiary designations for his annuities with Ms. Mohundro, Mr. Rosen, or Ms. Lawrence.

28. On March 13, 2002, American Heritage sent a facsimile to Ms. Lawrence stating, "Our records list Angelina Barnett as the named beneficiary" of the two annuity policies. (Trial Ex. 21).

29. Later in the month of March of 2002, Mrs. Barnett submitted through Ms. Lawrence a claim to American Heritage regarding the two annuity policies. (Trial Ex. 22).

30. On April 1, 2002, American Heritage wrote Mrs. Barnett, advising her that it had granted her claim under the two annuities and was removing Mr. Barnett as owner, endorsing the policies to Mrs. Barnett as owner, and changing the beneficiary upon Mrs. Barnett's death to Ms. Joan Markiewicz, Mrs. Barnett's niece. American Heritage attached to its April 1, 2002, letters an endorsement for both policies, reciting the change of ownership and beneficiary.

31. Plaintiffs filed a claim for death benefits with American Heritage regarding the annuity policies on February 11, 2005.

32. Plaintiffs brought the present suit against American Heritage and Mrs. Barnett on February 3, 2006.

## **CONCLUSIONS OF LAW**

1. The parties agree that the central issue in this case is Mr. Barnett's intent regarding who he desired to name as beneficiary of the two American Heritage annuity policies pursuant to the two November 20, 2000, Beneficiary Change Forms.

2. The plaintiffs testified at trial that they brought this lawsuit after they came to believe that Mrs. Barnett wrote her name on the Beneficiary Change Forms, and that based upon this belief, plaintiffs concluded that Mrs. Barnett had subverted their grandfather's intent. The jury, however, after hearing the evidence, ruled that plaintiffs did not prove by clear and convincing evidence that Mrs. Barnett wrote her name onto the Forms without Mr. Barnett's authority.

3. In light of the jury's verdict, the court must now determine the legal effect of the Beneficiary Change Forms, that is, who is entitled to the proceeds of the two American Heritage annuities presently being held in the registry of the court. See Tenn. Farmers Life Reassurance Co. v. Rose, No. E2005-00006-SC-R11-CV, 2007 WL 2826918, at *4 (Tenn. Oct. 2, 2007) (holding that the legal effect of a contract or other written instrument is a question of law).

4. The question of who is the beneficiary of the policies is governed by the contractual language of the policies themselves. See Cronbach v. Ætna Life Ins. Co., 284 S.W. 72, 73 (Tenn. 1926) (holding that the mode of changing beneficiary prescribed in the policy must be followed); Life & Cas. Ins. Co. of Tenn. v. Cornish,

315 S.W.2d 6, 8 (Tenn. Ct. App. 1958) (ruling that provisions regarding change of beneficiary are part of the terms of the contract, and in order to effect a change of beneficiary, the mode prescribed in policy must be followed); Nat'l Life & Accident Ins. Co. v. Bryant, 179 S.W.2d 937, 938-39 (Tenn. Ct. App. 1943) (same); Dyke v. Dyke, 122 F.Supp. 529, 535 (E.D. Tenn. 1954) ("A life insurance policy in which the right to name or change the beneficiary is reserved to the insured is a contract in which the insurer agrees to pay the death benefit to the beneficiary designated by the insured."). "[T]he person entitled to a policy's benefits is the person designated as the beneficiary in the insurance contract." Travelers Ins. Co. v. Lancaster, No. 01-A-01-9508-CH 00379, 1996 WL 23491, at *2 (Tenn. Ct. App. Jan. 24, 1996).

5. The American Heritage policies, the standard provisions of which are identical, provide in relevant part regarding beneficiaries and changes of beneficiaries as follows:

> **BENEFICIARY** - The primary and contingent Beneficiaries are as named in the application unless changed by the Owner. The primary Beneficiary will receive any death benefit proceeds if the Owner or Annuitant dies . . . .
>
> **OWNER AND BENEFICIARY CHANGE** - The Owner may change the Owner and/or Beneficiary at any time during the lifetime of the Annuitant by submitting to our administrative office a written request. The change will take effect on the date the request was signed, but it will not apply to any payments made by the Company before the request was received and recorded by the Company. (Policy, p. 4).
>
> * * *
>
> **DEATH BENEFIT -** While this Contract is in force prior to the Maturity Date, We will pay a death benefit upon the

earliest of the death of the Owner or the death of the Annuitant . . . . Payment will be made to the Beneficiary upon receipt of due proof of death. However, if the only Beneficiary is the surviving spouse of the Owner, such Beneficiary may elect to become the Owner of this contract and it will continue. In this case, the surviving spouse shall become the Annuitant and a new Beneficiary must be named. (Policy, p. 7).

* * *

**THIS CONTRACT** - This Contract, the attached application and any attached endorsements explain the essential features of Your annuity coverage. All of your rights and benefits will be determined solely by the provisions of the Contract between You and the Company . . . . (Policy, p. 8).

* * *

**ELECTIONS, DESIGNATIONS, CHANGES AND REQUESTS** - All elections, designations, changes and requests must be in a written form satisfactory to the Company and will become effective when received by the Company in the Administrative Office.

**MODIFICATIONS** - Only the President, Vice President, Secretary or Actuary of the Company has the power to change, modify or waive any of the provisions of this contract. Any changes, modifications or waivers must be in writing. We will not be bound by any promises or representations made by any agent or other person except as specified above. (Policy, p. 9).

6. Since this court has subject matter jurisdiction based upon diversity of citizenship, substantive issues of law are governed by the law of the State of Tennessee. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). The parties agree that Tennessee law governs the issues in dispute.

7. According to the Tennessee Supreme Court, "[a] cardinal rule of contract interpretation is to ascertain and give effect to the intent of the parties." Allstate Ins. Co. v. Watson, 195

S.W.3d 609, 611 (Tenn. 2006); see also Rose, 2007 WL 2826918, at *4 (holding that powers of attorney should be construed using the same rules of construction generally applicable to contracts and other written instruments; if the meaning is unclear or ambiguous, the intention of the principal, at the time of execution, should be given effect). "[T]he primary rule [regarding interpretation of an agreement] is that the intent of the parties must prevail." Coble Sys., Inc. v. Gifford Co., 627 S.W.2d 359, 363 (Tenn. Ct. App. 1981).

8. Mrs. Barnett is listed in Section 1 on each Beneficiary Change Form as the primary beneficiary in a complete and hand-printed notation containing her full name, address, social security number, relationship to insured, and date of birth, constituting all of the requested information for designating an individual as a primary beneficiary of the policies. (Trial Ex. 6 & 8).

9. In Section 2 of each Form, there is an incomplete, typed reference to "The Thomas O. Barnett Trust." Each Form, however, explicitly requires the following if a trust is to be designated as a beneficiary of an annuity policy:

- "Please provide a copy of the first and last page of trust establishing trustee and date." (Form, page 1, section 2; Trial Ex. 6 & 8).

- "For designation number 2, provide the trust name and give the date of the trust agreement." (Form, page 2; Trial Ex. 6 & 8).

10. To the extent that plaintiffs base their claim to the proceeds of the annuities upon Mr. Barnett's attempt, in October of

-13-

2000, to designate his Trust as beneficiary (which American Heritage rejected), the court finds that the November 20, 2000, Beneficiary Change Forms expressly revoke such previous attempt. The Forms clearly provide, "[t]he policyowner revokes any previous designation of beneficiary." (Trial Ex. 5 & 6, p. 2). Moreover, as indicated by American Heritage in its rejection letter, Mr. Barnett submitted the incorrect change form.

    11. The court finds that the partial type-written reference to "The Thomas O. Barnett Trust," which was typed onto the Forms by Ms. Mohundro and then mailed to Mr. Barnett in Florida, was not a valid designation of beneficiary since (1) the Trust tax I.D. number is not listed on the two Beneficiary Change Forms; (2) the date of the Trust is not listed; and (3) it is undisputed that American Heritage was never provided with a copy of any part of the Trust document. The typewritten reference to the Trust is incomplete and ineffective since American Heritage had no way to identify what trust document was being referred to, and it was obviously not satisfactory to American Heritage, since it determined that Mrs. Barnett was the sole beneficiary and new owner of the policies effective April 1, 2002.[2] See Potts v. Mayforth,

---

[2]Sharon Whichard, American Heritage's Rule 30(b)(6) witness, testified in her deposition that she would not have accepted the Beneficiary Change Forms as submitted and would have returned them to the annuity owner. The court finds that this testimony is of minimal value, as it is undisputed that American Heritage in fact accepted the Forms and acknowledged Mrs. Barnett as the sole beneficiary of the annuities.

-14-

59 S.W.3d 167, 173 (Tenn. Ct. App. 2001) (holding attempted change of beneficiary was ineffective where owner did not sign or date the form, reasoning, "[b]y filling out a portion of the form and submitting [it] to the insurance company, the insured did not do all that he could to comply with the requirements of the policy"). Accordingly, the court finds the typewritten reference to the Trust on the Beneficiary Change Forms to be of no effect.

12. Furthermore, the court finds that the Forms themselves show that Mr. Barnett intended that his wife, Mrs. Barnett, be the sole beneficiary of the two annuities, since Mr. Barnett decided to add Mrs. Barnett as the beneficiary and to leave incomplete the section referencing the Trust.

13. The court finds that the Beneficiary Change Forms are not ambiguous and do not require resorting to extrinsic evidence. The court's conclusion, however, that Mrs. Barnett is the intended beneficiary of the annuities is also supported by evidence presented at trial of other transactions directed by Mr. Barnett after he married Mrs. Barnett, namely, causing ownership of the Murray Hill residence to be jointly titled with Mrs. Barnett and designating Mrs. Barnett as beneficiary of the John Hancock annuity and the Bankers Life policy. Such evidence demonstrates Mr. Barnett's plan and intent after his marriage to Mrs. Barnett to revise his estate planning in several respects for Mrs. Barnett's benefit, which is consistent with Mr. Barnett's intent to designate his wife as beneficiary of the American Heritage annuities.

14. Plaintiffs' reliance on the Trust document as supposedly demonstrating that Mr. Barnett intended the Trust to be the beneficiary of the American Heritage annuity policies is misplaced. In Tennessee, a change of beneficiary must be accomplished in substantial compliance with the terms of the insurance or annuity contract, and thus the language in the Trust does not affect Mr. Barnett's designation of Mrs. Barnett as beneficiary via the Beneficiary Change Forms. See Sun Life Assurance Co. v. Hicks, 844 S.W.2d 652, 654 (Tenn. Ct. App. 1992); see also Cook v. Cook, 521 S.W.2d 808, 813 (Tenn. 1975) (holding the language in a will does not operate to deprive the named beneficiary of her rights to insurance policy proceeds); Teachers Ins. & Annuity Ass'n v. Harris, 709 S.W.2d 592, 595 (Tenn. Ct. App. 1985) (holding a property settlement agreement does not affect a designation of beneficiary in an annuity contract); Stoker v. Compton, 643 S.W.2d 895, 896-98 (Tenn. Ct. App. 1981) (holding even though testator clearly indicated in his will that he wanted life insurance policy proceeds to benefit an individual other than the named beneficiary, a constructive trust did not arise requiring distribution of the proceeds according to will, where the testator/insured made no effort to change beneficiaries under the policies' provisions regarding changes of beneficiary). Here, as American Heritage found, the Beneficiary Change Forms designating Mrs. Barnett as beneficiary complied with the terms of the annuities.

15. Accordingly, based upon the proof at trial and the entire record in this cause, the court hereby enters judgment in favor of Mrs. Angelina Virginia Barnett and directs the Clerk of the Court to issue payment of the funds from the annuities held in the court's registry plus accrued interest to Mrs. Barnett and her attorneys.

IT IS SO ORDERED.

| | |
|---|---|
| | s/ Tu M. Pham |
| | TU M. PHAM |
| | United States Magistrate Judge |
| | |
| | January 8, 2008 |
| | Date |